524-1184 for the appellants I've got Mr. DeVore and for the Appellees Mr. Drinkwine.  Correct, Your Honor. Good morning, Counsel. I'm glad I got a little chuckle out of Mr. DeVore on my run in Judge Parker's comment off the bench. I think he's never said on any trial that there's nothing more to be said. None of the trial courts have one of those divorces that you question whether you want to proceed any further. Just kind of saps your will to live. I know I've said a couple of those over the course of my career. So Mr. DeVore, are you ready to proceed? Yes, sir. Go right ahead. Thank you. If it pleases the Court, Counsel, my name is Tom DeVore, I represent the appellants in this case, which is a property tax dispute. You know, property taxes are a common conversation in jurisdiction. In 2025, they escalate consistently across the state. The issue of the assessment process is becoming more of a conversation. And I think this case is one of the big issues of our particular decade right now. And I think the issue that this Court is going to be asked to rule upon is going to set precedent for, arguably, it could be statewide until another district opines, but certainly for the 48 counties that we have in the Fifth Appellate District. The last time that this particular issue was looked upon with authority was the Walsh case of 1998. So that's 27, almost 28 years ago. And I'll be referring to that case. As the Court may be aware from looking at this, what we're dealing with here is the general reassessment practices of an assessor. And under the statute, you have a general reassessment period on property that occurs every four years. The statute also allows for there to be what's called a quarter plot, which means the county board can pass a resolution, which it did in this county, so that you can break your county up into four equal assessment districts. And what that does is it alleviates some of the burden that's placed upon these assessors who are absolutely all underfunded. There is no doubt whatsoever. That's discussed here. I acknowledge it. The law doesn't account for it, which is the issue here. They are underfunded. And I'll get to some of that as it relates to this case. But a quarter plot, what it means is that once each year, you have to take the properties in that assessment district, and you have to do a general reassessment of all of the properties in that district. That is at least more palatable than taking all of the properties in a whole county and doing all in one year, which is what has to happen if you don't have quarter plot division. So Coles County had quarter plots, and we're dealing with the 2022 quarter plot. There is a township assessor, Mr. Barnes, who testified in this case. He seemed to be very knowledgeable. He was very honest. And then you have Ms. Shores, who was the county assessor, who is no longer in Coles County. She actually wasn't replaced, and she now is the assessor in Madison County. A couple of things that I want to point out as it deals with this is that they even acknowledge it, and I'm referring to the facts of my colleague here when they filed their brief, because the facts are there when they give the recitation, and they point to them. Does a better job than I even did of pointing out why the assessments that were engaged in for my clients are absolutely unconstitutional. And I'm looking at page 5 of their brief, and they cite to the record, where Barnes was not able to personally inspect every property in Lafayette Township in 22 because he doesn't have enough personnel. True. He recommended an 11% multiplier on all 2,686 properties. Now keep in mind, Justices, this is something that's being presented in a general reassessment period. In general reassessments, the statute says, the Constitution requires uniformity, that every property in that reassessment district be physically inspected and assessed at fair market value uniformly as close to 33 1 3rd of the fair market value as they can get. Mr. Barnes acknowledges, and my colleagues even put in their brief, that he didn't do that because he doesn't have the people, and he just used a multiplier based upon the sales ratio analysis. And they also refer to, and I have a copy because it's an exhibit that we've referred to, was the e-mail from Ms. Shores, I apologize, to Mr. Barnes, and it says, and he even testified, Mr. Barnes, we work through the parcels in our townships on a four-year time frame. That in and of itself is an admission that they're violating uniformity and not complying with the statutory requirements. It's really straightforward. We also have, as our exhibit 2, that the court can look at, and bring it with me, but it speaks for itself, that there are overwhelmingly 80% of the township properties in Lafayette just got the 11% multiplier. What that means is that there was no general reassessment of these properties. There wasn't an inspection. Were there additions? Were there revisions? Did the market values change? I mean, that's the whole purpose of a general reassessment period. You look for market fluctuations. You look for buildings that got added that they didn't catch. All of these types of things happen uniformly in a general quad reassessment. Can you have, and I'm going to get to it a little bit more in a second, can you have revisions and corrections in a non-general reassessment period? The answer is absolutely. It's appropriate. The difference being is that in a general reassessment year, you have to do it for the whole district, and that's not what Ms. Shores did and Mr. Barnes acknowledged it. I have in our brief, and it didn't get very complicated because it doesn't need to be. I mean, this case is almost right on point with Walsh, and I pointed to the few cases that the court can look at that make it crystal clear, even the one with People's Gas and Light from 1918. It says an assessor is bound to make assessments according to laws and rules. If they knowingly and intentionally disregard those rules, making no pretense of applying them, it doesn't work. The Walsh case, abandonment of the mass appraisal method in individual cases. While applying it to a majority of the property results in a constitutional violation. The reason that is is because if you're in a general reassessment period and an assessor such as Ms. Shores says, well, I have these subdivisions that I think are worse, the language in her testimony, they were worse. So I'm going to go in there and I'm going to look at them and I'm going to adjust them to fair market value based upon what she thinks is appropriate. It doesn't matter if it, and she testified, well, the prices per square foot had changed based upon sales analysis. Nothing wrong with that. I found one that maybe had a garage. Nothing wrong with that. The point to be made, and it's something that the, let me back up, strike that. The judge in our hearing very early on said, well, counsel, isn't this the Walsh case? Don't you have exactly the Walsh case here? And I'm like, yes, we do. The employees in the county tried to make an argument, well, she was making revisions and corrections, and she can make revisions and corrections every year. And I argued and I put it in our brief, that's not even an issue. It's a red herring. Because the point being, if you're fixing problems in a general reassessment period, you're going to do the whole district. Because when you look at the sales ratio study that we've attached as Exhibit 3, it shows a high and a low. It shows properties way under assessed. It shows properties way over assessed. That lack of uniformity is what a general reassessment period is supposed to fix. And that is exactly what happened in the Walsh case. In the Walsh case, a property was adjusted based on fair market value, and they argued that you can't do that to us if everybody else is getting mass appraisal. And, oh, by the way, there's testimony in the record of Walsh that if you look at these sales ratio studies, they refer to them in Walsh, in Pekin Township, that you have properties way down at 7 percent, way up at 68 percent, anywhere in between, the general reassessment is supposed to fix that. Now, the judge in his order, filed October 23, 2024, the judge said the facts of this matter were similar to Maul. Now, Maul was at Rule 23. That's fine. He can certainly use it. It's not authority. It doesn't matter. But this case is not similar to Maul. But if you go to the next page of his order, he says Walsh found lack of uniformity in the methods resulted in them arbitrarily paying taxes on a greater percentage of their property, which is what's happening here, but the Maul court determined that an additional hurdle must be met in that plaintiff must show they are paying taxes on a greater percentage of property's fair cash value than do other property owners in the district. And this court shall adopt the logic of Maul. Okay? And then the court says no evidence was presented to indicate that any of the properties, which are my client's appeal, are paying a greater percentage than the other property owners of the district. Two things on that, Justices. One, Walsh does not make that holding, that not only if you show that there's different methods used, which there's no issue here with that, that you also have to show that that somehow has prejudiced you. Walsh didn't hold that. Maul seems to suggest it. But the issue they have, Judge, is that the sales ratio analysis of Exhibit 3 that we provided to the court and we provide to you shows that my clients are paying higher percentages because when you look through the sales ratio study, you can look at it, there's properties down 15%, 7%, 18%. You know, under-assessed is what that means. And Ms. Barnes, strike that, Mr. Barnes, admitted on his testimony, he admitted in the email, I don't have time to do the whole township in one year. I don't have the people. And my argument to you and my argument to the trial court was that's not my client's problem. It's not their problem. There is a legislative problem here, I agree, and I acknowledge that the legislature has to fix what's going on here because the assessor, Mr. Barnes, hasn't even assessed all those properties in one year. But help me understand this. If you're saying that it's perfectly legitimate to correct these property taxes, to go in and look at the garages or these things, how would you do that for every single property? I mean, wouldn't it make more sense just to every however many years, every four years or whatever, just go in and use the multiplier? I mean, you'd never, practically speaking, be able to correct the assessment. That's a good question, Justice. What I would say to you is that if you just use the multiplier all the time, which I'm here to tell you most counties do that, there's no uniformity. Because if you just add a multiplier, some properties in certain areas of your county will depreciate, some will appreciate, some will really appreciate, and multipliers never account for that. The whole purpose of a general reassessment period is to adjust for market fluctuations in addition to revisions based upon a new shed that didn't get caught. But that's how you fix that. And so when you just apply a multiplier, which if you look at the Walsh case, ma'am, that's where ultimately the court said you have to pay. And all of Pekin County, or Pekin County, they had to reassess everything with professionals and experts because they had been using multipliers for decades. So if you don't do a reassessment like every property gets taken the same, did it go up in value, did it go down in value, you have to do that or you can't fix things. Ms. Shores said, and she was being honest, she was not being dishonest, I think the townships that I thought were worse. Worse based on what? Because the statute doesn't allow that. The statute says in the Constitution based on Article 9, uniformity, you have to use the same method. So if they would have taken all of Lafayette Township and they would have done what Ms. Shores did across the spectrum, my point is have no complaint, none whatsoever. But you can't look at their subdivisions because you think they're bad and say, well, Mr. Barnes can't do it because he's busy and I'm going to look at these townships that are worse and I'm going to adjust them to what I believe is market value. Okay, what about the other thousands of properties that just got 11% of which the sales ratio analysis shows many of them were under assessed? They should have been and the statute requires it, the Constitution requires it, she should have analyzed all of them too. They don't have the resources, Justice. I acknowledge that. There's legislative conversations going on that I'm involved in now. How do we deal with this? Because this statute's been in place and the constitutional provision, it doesn't work anymore because you have so many people, so many parcels, tens of thousands of parcels, and the issue I have for you is that my clients shouldn't bear that burden and they have to be treated the same. Same way with Charleston because I say that I'm beeping. Charleston wasn't even in a general reassessment period. They weren't in one at all. Ms. Shores admitted in her testimony that she just didn't have time, she didn't have time to look at them during the general reassessment period, so we went back and grabbed them because we thought they were getting out of whack. That's the same thing. You went in a non-reassessment period, grabbed these parcels in Charleston County because you just thought that you needed to catch them up. We can't assess that way, Justices. We just can't. The law doesn't allow it, the Constitution doesn't allow it, and that's why this ruling in this case is extremely important because I'm asking you to analyze this based upon uniformity and the different practices and the arbitrariness and say that this doesn't work. And then hopefully there's a legislative solution to get these counties more funding in the future. I think that's possible. But right now we have taxpayers who are suffering an unfair burden merely because of the lack of resources of these assessment offices, and that can't stand under the law. Thank you. Any questions, Justice Paul? I'm assuming the opposing counsel is going to talk about jurisdiction. So if I were you, you'd come back up to me. I would be seated for that. I'm analyzing my question. Yeah, I recognize that. May it please the Court and good morning, counsel. Chris Drinkwine on behalf of the Coles County Treasurer, George Edwards, respondent at the lead. This isn't a case where the court needs to set any precedent. This is a straightforward application of the burden of proof that a tax objector must carry before the circuit court. But the circuit court didn't belong here in the case. It didn't have jurisdiction. And this court lacks appellate jurisdiction because the circuit court didn't have subject matter jurisdiction. Our Supreme Court has made clear that a party has two mutually exclusive appellate options to challenge a property tax assessment after the Board of Review made its decision. It can file an appeal with the Property Tax Appeal Board, or it can pay the taxes and file a tax deduction complaint in circuit court. In Madison 2, Associates v. Pappas, our Supreme Court wrote, where valuation is at issue, these options are mutually exclusive. If a taxpayer seeks review before the Property Tax Appeal Board, he or she is precluded from filing objections based on valuation in the circuit court. Because the tax objectors in this case chose to file appeals with the Property Tax Appeal Board, which could only be based on a valuation challenge, the circuit court did not have jurisdiction to adjudicate the subsequent tax objection complaint. And because the circuit court lacked jurisdiction, this appellate court also lacks jurisdiction to hear this appeal. The tax objectors didn't file a plot brief in this case, and we've yet to hear their response to the jurisdictional argument. But Respondent anticipates they'll argue that their appeal before the Property Tax Appeal Board did not involve valuation, or rather a question of law, specifically a uniformity clause challenge. And according to the objectors, the Property Tax Appeal Board refused to hear their appeals because it raised a question of law. But that's not exactly what happened if you examine the record. The objectors' Property Tax Appeals were deficient, and they were given 30 days to amend their appeals to support them with pertinent valuation evidence. They allowed those 30 days to lapse without providing that evidence, and then their appeals were involuntarily dismissed by the Property Tax Appeal Board based on their incomplete filings. And if we look at the notices that were sent by the Property Tax Appeal Board to the tax objectors, these are exhibits to the tax objection complaint, the voluminous exhibits, and they're all the same, but if we look at record page 109 to 113, that's the one that was sent to James and Tamara Eades. And the letter provides, upon review of the petition, the Property Tax Appeal Board finds that the information is incomplete. Please complete those items checked on the attached checklist and return them with the checklist within 30 days of the date of this correspondence. If all information required to fully complete the filing of your appeal is not received by May 27, 2023, your appeal may be dismissed. Now, on the checklist, other than indicating you have to say what the basis of your appeal is and support it, the other box is checked on page 111 of the record with an explanation that a contention of law alone is insufficient to support the requested reduction in the subject's assessment. And then they advise as to the various materials needed to support the appeal. And the notice sent to the Eades and to all the tax objectors also includes a memorandum, and the one for the Eades is at page 113 of the record. And that explains further that the Property Tax Appeal Board as an administrative agency has no authority to determine constitutional issues. So if it was the tax objector's intention to raise a uniformity cause argument before the Property Tax Appeal Board, they were advised, expressly notified, that that board couldn't adjudicate that claim. And at that point, they should have withdrew their appeal or moved to voluntarily dismiss it. And had they done so, their property tax appeals would have been nullities. So said this appellate court in the Lake County Treasurer case that we cite. And had they withdrawn their appeals, they would not have been precluded from proceeding with a tax objection complaint in circuit court. Because in the Lake County case, the Lake County Treasurer made the subject matter jurisdiction argument in the circuit court after the tax objectors had withdrew their Property Tax Appeal Board appeal. And the appellate court held that the circuit court did have jurisdiction because they withdrew it, making it a nullity. This case is the exact opposite of that. The tax objectors did not move to withdraw or voluntarily dismiss their appeals before the Property Tax Appeal Board. They let their appeals die a natural death there by not complying with the notice to provide valuation information to support their claims. The EADS allowed their Property Tax Appeal Board appeal to die a natural death on page 192 of the record where it says, Case Dismissed After Incomplete Filing. It does not say Appeal Withdrawn or Case Voluntarily Dismissed. So the tax objectors, bringing their Property Tax Appeal Board appeals, the only thing they could have been doing before that board was challenging the valuation of their properties. Those appeals were involuntarily dismissed. And the tax objectors chose that appellate option, and that choice precluded their filing of a property tax complaint in circuit court. So under our Supreme Court's holding in the Madison 2 Associates case, the circuit court lacks subject matter jurisdiction to adjudicate the tax objection complaint, and in turn, this appellate court lacks jurisdiction over this appeal, and it should be dismissed. If this court decides otherwise and determines that it does have jurisdiction, the respondent treasurer respectfully contends that the tax objectors failed to prove by clear and convincing evidence that their property tax assessments violated the uniformity clause of the Illinois Constitution. Because property tax assessments are presumed correct and legal, they had the burden to prove a violation of the uniformity clause by clear and convincing evidence. And they failed to do so in this case in two different ways. And one is the Section 975 justification, which takes it outside of the uniformity clause altogether, outside of Walsh altogether. And the other one is the Mole case. And that's really the only place where this court would end up making law on this case. If you wanted to crack into the Second District's Rule 23 order saying what the Supreme Court meant in Walsh. Our contention is that they got it right and that the trial judge got it right by following Walsh, but that's not necessary because the first basis for the trial court's conclusion that the objectors didn't meet their burden was sound. So the tax objectors presented no evidence, let alone clear and convincing evidence, that their respective assessments were not the result of lawful revisions or corrections pursuant to the assessor's authority under Section 9-75, which provides that the chief county assessment officer may in any year revise and correct an assessment as appears to be just. Under the uniformity clause, taxing officials may not value the same kinds of properties within the same taxing boundary at different proportions of their true value. But properties subject to a Section 9-75 correction are not the same as properties that are not subject to a Section 9-75 correction. So there's no uniformity clause violation when properties subject to correction under that section are assessed differently than the rest of the properties that are not subject to correction under Section 9-75. And contrary to counsel's contention a moment ago, you do not have to do that with respect to all the properties. All the properties aren't going to have corrections. Corrections aren't just for improvements. They're for diminutions in value, too. Putting in a swimming pool, taking one out, adding a garage, raising a garage, what have you. And the linchpin of this case and why the circuit court was correct is because the tax objectors failed to prove that each of their respective properties had not undergone improvements that necessitated a correction by the assessor pursuant to Section 9-75. And, in fact, the objectors have not even explained why it was incorrect for the circuit court to conclude that they failed to prove that each respective property had not undergone improvements that necessitated revision and correction under that Section 9-75. We argue that they've waived it under Rule 341H-7. But even if you go beyond the waiver, the circuit court referenced the assessor's testimony that the neighborhood she looked at had things missing for 10 to 12 years. There was testimony about the flyover, software, and so forth. And the circuit court found that the objectors presented no evidence that their properties weren't subject to a correction by improvement, such that it was unclear whether the property's assessments were pursuant to the lawful authority under Section 9-75. The circuit court also correctly determined that this case is distinguishable from the Supreme Court's decision in Walsh because there was no evidence in Walsh and no argument even advanced that the subject property had undergone any improvements. Instead, the focus in Walsh was solely on the disparate property value methods utilized among like properties. The mansion or the Haggard house, whatever it was in Walsh, if it had improvements, it wouldn't be like the other properties in the assessment. And you wouldn't even be talking about a uniformity challenge. They didn't have that in that case. It was a straight-up uniformity challenge, uniformity clause challenge. This isn't. In this case, the assessor testified that certain properties had – neighborhoods had properties where she had missed improvements for years, and she knew them to be undervalued. The circuit court concluded that the tax objectors did not prove that their particular properties were not properties for which she was entitled to make corrections under 9 – Section 9-75. Accordingly, the objectors failed to show that their respective properties were like the other properties for which the multipliers were utilized, and therefore failed to prove a violation of the uniformity clause by clear and convincing evidence. The second reason that the tax objectors failed to satisfy their burden of proof is they failed to establish that they were paying property taxes on a greater percentage of their property's fair cash value than do other property owners. And this was – the circuit court, in denying the tax objectors' motion to reconsider, first brought up the Mall case. The circuit court relied on the reasoning set forth by the 2nd District in their Rule 23 order in Mall v. Illinois Property Tax Appeal Board as an additional rationale to support its conclusion that the objectors did not satisfy their burden. The circuit court observed that the appellate court in Mall, citing Walsh, determined that in addition to showing that two different appraisal methods are being utilized, the plaintiffs must also show that they are paying property taxes on a greater percentage of the property's fair cash value than do other property owners. The circuit court adopted the logic and the reasoning of Mall and found that no evidence was presented to indicate that any of the objectors are paying property taxes on their properties at a greater percentage than other property owners are. Now, the objectors have cited to Exhibit 3, which contains sales assessment ratios that they claim range from 7.5 to 255.78 percent, which according to them are far worse than the ratios in Walsh. Respondent doesn't find those numbers in Exhibit 3. Respondent sees a range of 17.88 to 42.24, and that range is not far worse than the 7 to 68 percent range in Walsh. And unlike Walsh, there's no evidence in this case that many other taxpayers are enjoying sales assessment ratios below the statutory 33.33 percent of fair cash value. So the tax objectors have not shown that the circuit court was incorrect in finding that there was no evidence that they're paying taxes at a greater percentage of their property's fair cash value than are other property owners. And for all of these reasons, Your Honors, the Coles County Treasurer respectfully requests that this appeal be dismissed for lack of appellate jurisdiction and alternatively that the judgment of the circuit court denying the tax objection complaint be affirmed on the merits for failure to satisfy the burden approved to show a uniformity clause violation. Thank you. Any questions? No questions. This is Bob. The failure to satisfy the burden, are you referring to the failure to supply the requested additional information? The burden before the Property Tax Appeal Board was not satisfied by failing to provide the evaluation information. The burden in the circuit court was not satisfied because they didn't show any information about their individual properties, frankly. They just made a uniformity challenge based on Walsh. They didn't, and they're still not engaging in the Section 975 analysis. So, Your Honor, the burden in the circuit court wasn't met because they didn't show that their properties weren't subject to correction or revision under Section 975 and also the moral rationale, if you want to go there. So those two burdens were different. Thank you. Thank you. Thank you. Before I talk about the issue of jurisdiction, which shouldn't take long, the argument that my colleague made, I think, is worthy of a brief conversation. 975 corrections. If this Court stands for the proposition in a general reassessment period that, oh, we're just doing 975 corrections, you have just followed the uniformity provision of the Constitution and the requirements of the statute. Just call it a correction. That's all you have to do. Oh, we, you know, the property value went up. It went down. Demolition to use. So we're correcting it. Well, if you can correct it, you know, ad hoc based on 975, uniformity means nothing. And I would say, he was talking about the sales ratio analysis, my colleague. And he couldn't find, he went from 17% to 42%. I'm looking at page 1. Here's 151. I didn't look at all of them, or justices. 151%, 119%. You have more than enough information to see that my clients are paying significant. They're paying 33 and a third because they got adjusted in a general reassessment year. There's a lot of people that are still catching a break. So you can't call them corrections. As to jurisdiction, first and foremost, we all know that you can raise, you can appeal jurisdiction, subject matter jurisdiction at any time. But you have to appeal it. Now, my colleague got into this case late. They're firm because I think this court issued an order. You haven't filed anything. If you don't file, we're going to move ahead. There was no notice of cross appeal filed in this case saying that we're going to raise the appeal in an appeal of our own subject matter jurisdiction. They didn't file anything. I've never seen subject matter jurisdiction raised in a response for the first time without ever having filed a notice that you intend to raise that in front of this court. So for that reason, they waived it. That's why they didn't file a response because, again, they didn't preserve the issue. If they wanted to raise that issue, they should have filed in 30 days after the judge is ruling a cross notice of appeal. They didn't do it. And they're going to argue it now after the fact in a response. It's not appropriate. Having said that, going to the substance. When you're going to raise a uniformity issue, an issue that says that there are irregularities in the law, you don't even have to go to the board of review if you don't want to. You can just wait and file a petition for tax objection. My clients chose to go to the board of review, which is what they wanted to do. That's what we did. Then following it with PTAB, PTAB says, hey, and my colleague read them to you, this is the stuff you need to provide us about valuation. And, oh, by the way, we don't hear issues of law. You've got 30 days. There was nothing we could file because we weren't raising an evaluation issue. It's quite clear that we are not raising valuation. We're raising uniformity and legal issues. So we let those cases lapse. Now, there's nothing in the case that they've cited. This case has to do with intervention by taxing bodies. There's nothing in there that says that if you just let that lapse that you are waiving the ability to go into the circuit court. There's no authority for that whatsoever, Justices. But, again, I don't even think you have to do that analysis. You conclude and file a cross-notice of appeal. Thank you very much. Any final questions? No questions. Thank you. Thank you, sir. Counsel, I believe we will take the matter under advisement and we will issue an order in due course. I appreciate your honesty. I hope that's what I did. Thank you.